# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

ERIC SAMPSON,

    Petitioner,

v.

WARDEN J.V. FLOURNOY,

    Respondent.

CIVIL ACTION NO.: 2:17-cv-109

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Eric Sampson ("Sampson"), who is currently incarcerated at the Federal Correctional Institution-Satellite Low in Jesup, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Motion to Dismiss. (Doc. 6.) Sampson filed a Response. (Doc. 8.) For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion, **DISMISS** Sampson's Section 2241 Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Sampson *in forma pauperis* status on appeal.

## BACKGROUND

After a jury trial, Sampson was convicted in the Western District of North Carolina of conspiracy to sell, distribute, or dispense controlled substances, in violation of 21 U.S.C. § 846. Jury Verdict, United States v. Sampson, 3:95-CR-31-02, (W.D.N.C. Dec. 1, 1995), ECF No. 190. On June 21, 1996, Sampson was sentenced to life imprisonment and ten (10) years' supervised release. J., United States v. Sampson, 3:95-CR-31-02 (W.D.N.C. June 21, 1996), ECF No. 217. Sampson's sentence was later reduced to 360 months' imprisonment. Order, United States v.

Sampson, 3:95-CR-31-02 (W.D.N.C. May 21, 2009), ECF No. 318. He has a projected release date, via good conduct time, of March 15, 2021. (Doc. 6, p. 1.) Sampson filed this Section 2241 to challenge his assigned Public Safety Factor ("PSF") of "greatest severity." (Doc. 1.)

## DISCUSSION

In his Petition, Sampson contends the Bureau of Prisons ("BOP") misapplied and misinterpreted Program Statement 5100.08 by assigning the "greatest severity" PSF to him. (Doc. 1, p. 4.) Sampson asserts he was a supervisor or manager in the drug conspiracy and not an organizer or leader. Sampson notes the Program Statement provides that an individual is held accountable in drug conspiracy cases based on the sentencing court's statement of reasons, and BOP personnel will only look to the Pre-Sentence Investigation report ("PSI") if the statement of reasons is not available, to determine an inmate's PSF. (Id. at p. 5.) Sampson asserts his case manager ignored the "facts" involved in his case. (Id.) Thus, Sampson maintains that, due to the misapplication and misinterpretation of BOP policy, he has been subjected to the "wanton infliction of mental and emotional pain[.]" (Id. at pp. 1, 6.) Sampson requests that his PSF be changed to reflect "moderate severity" and compensatory damages. (Id. at p. 7.)

Respondent raises several reasons why Sampson's Petition should be dismissed, which the Court addresses in turn.

## I. Whether Sampson can Proceed Pursuant to Section 2241

Respondent contends Sampson's claim concerning the application of the "greatest severity" PSF[1] to his custody classification cannot form the basis of his Section 2241 Petition because Sampson's claim does not relate to the execution of his sentence. (Doc. 6, p. 3.)

---

[1] The BOP defines a PSF as "relevant factual information regarding the inmate's current offense, sentence, criminal history, or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public." BOP Program Statement 5100.08, ch. 5, app. A, p. 7 (2006).

2

Instead, Respondent asserts Sampson's opposition to his PSF "amounts to an impermissible challenge to the conditions of his confinement, which is not cognizable under § 2241." (Id.) Respondent states this Court, as well as other courts around the country, have dismissed Section 2241 petitions in which a petitioner challenges his PSF. (Id.) In support of this premise, Respondent cites to this Court's decisions in Wrobel v. Johns, No. 5:16-cv-36, 2016 WL 7242576 (S.D. Ga. Nov. 1, 2016), *report and recommendation adopted*, 2016 WL 7242725 (Dec. 14, 2016), and Caba v. United States, No. CV310-082, 2010 WL 5437269 (S.D. Ga. Nov. 30, 2010), *report and recommendation adopted*, 2010 WL 5441919 (S.D. Ga. Dec. 27, 2010).

In Caba, (which this Court relied upon in ruling on the Section 2241 petition in Wrobel), this Court determined a petitioner's allegations concerning his security classification—specifically the BOP's "imposition of a PSF of 'Alien'"—was a challenge to the conditions of the petitioner's confinement and were not cognizable in a Section 2241 petition. 2010 WL 5437269, at *2. However, this Court has since determined a petitioner can challenge his security classification or place of confinement via Section 2241.[2] Baranwal v. Stone, No. CV 314-098, 2015 WL 171410, at *2 (S.D. Ga. Jan. 13, 2015); Herrera v. Johns, Civil Action No. CV513-031, 2013 WL 5574455, at *1 n.1 (S.D. Ga. Oct. 8, 2013). Other courts have reached this same conclusion. See United States v. Saldana, 273 F. App'x 845 (11th Cir. 2008) (per curiam); Becerra v. Miner, 248 F. App'x 368 (3d Cir. 2007) (per curiam); Burris v. Beasley, Case No. 2:18-CV-9-JM-BD; 2018 WL 1464668, at *1 (E.D. Ark. Mar. 7, 2018); Sampson-Molina v. United States, Civ. No. 09-1080-CV-W-NKL-P, 2010 WL 1486055, at *2 (W.D. Mo. Apr. 14, 2010).

---

[2] Respondent's citation to case law finding Section 2241 is not the proper vehicle by which to challenge a PSF is not erroneous. This Court's contrary citations merely are illustrations that, as a whole, there is no consensus on this issue.

Courts in the Fifth Circuit note the distinction between a Section 2241 and a civil rights action "becomes 'blurry' when an inmate challenges an unconstitutional condition of confinement or prison procedure that affects the timing of his release from custody." Pham v. Wagner, No. 5:14-CV-67(DCB)(MTP), 2016 WL 5852553, at *2 (S.D. Miss. Oct. 6, 2016) (citing Carson v. Johnson, 112 F.3d 818, 820–21 (5th Cir. 1997)). As a result, the Fifth Circuit Court of Appeals has "'adopted a simple, bright-line rule for resolving such questions.' If a favorable determination of an inmate's claims would not automatically entitle the inmate to accelerated release, the proper vehicle is a civil rights suit." Id. (quoting Carson, 112 F.3d at 820–21). If a petitioner is not seeking immediate or early release from custody and is instead seeking to have his PSF removed so that he will be eligible for programs that could reduce his sentence, he has not alleged that a favorable determination would automatically entitle him to a speedier release from custody. Thus, the proper vehicle for raising his claims would be a civil rights suit. Id.; see also Boyce v. Ashcroft, 251 F.3d 911, 914 (10th Cir. 2001) ("Prisoners who raise constitutional challenges to other prison decisions—including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, e.g., conditions of confinement, must proceed" with a civil rights lawsuit.).

I find the Fifth Circuit's test to be proper for resolving this question. Based on that test, Sampson cannot pursue his claims in this Section 2241 Petition because he is not seeking immediate or early release from custody. While a favorable determination may entitle him to participate in programs that could reduce his sentence (not that he makes such an assertion), a favorable determination does not automatically entitle him to a speedier release from custody. Therefore, the Court should **GRANT** Respondent's Motion to Dismiss and **DISMISS** Sampson's Petition for lack of jurisdiction. Even if this Court had jurisdiction over Sampson's

4

Petition, his claims would still be subject to dismissal for the reasons discussed in the next Section of this Report.

**II.     Whether the BOP's PSF Assignment is Entitled to Deference**

Respondent alleges the BOP's classification decisions, such as the assignment of a PSF to an inmate, are within the BOP's discretion, as given to the BOP by Congress. (Doc. 6, p. 4.) Because Congress gave the BOP discretion how it applies custody classifications, Respondent urges the Court not to disturb the PSF applied to Sampson. (Id.) Sampson implies no deference is owed to the BOP's classification decision because its decision was based on "false, fictitious, and fraudulent information" and a misapplication of Program Statement 5100.08. (Doc. 8.)

Congress gave the BOP full discretion for the classification and housing of its inmates, and the BOP is to consider the nature of the offenses committed and any statement from the court imposing the sentence, among other factors. 18 U.S.C. §§ 3621(b), 4081. "[T]he placement and classification of inmates inside a prison 'is a matter [sic] peculiarly within the province of prison authorities' administrative duties.'" Jolly v. Van Peavy, No. 5:12-CV-241(MTT), 2012 WL 4829269, at *3 (M.D. Ga. Aug. 30, 2012), *report and recommendation adopted*, 2012 WL 4829515 (M.D. Ga. Oct. 10, 2012) (quoting Freeman v. Fuller, 623 F. Supp. 1224, 1227 (S.D. Fla. 1985)); Young v. Wainwright, 449 F.2d 338, 339 (5th Cir. 1971) (explaining that "[c]lassification of inmates is a matter of prison administration and management with which federal courts are reluctant to interfere except in extreme circumstances").

In carrying out this discretion, the BOP uses a system of public safety factors as an aid to determine the level of security necessary for a particular inmate in order to insure the public's protection. BOP Program Statement 5100.08, ch. 5, pp. 8–11. Staff are to look at "the Statement of Reasons (attached to the Judgment) and ensure the information provided is appropriately used

in classifying the inmate." Id. at ch. 6, p. 4. A drug offender whose current offense includes being part of an organizational network where "he or she organized or maintained ownership interest/profits from large-scale drug activity **AND** [t]he drug amount equal or exceeds" 31 grams of cocaine base shall be assigned the "greatest severity" PSF. (Doc. 1-1, p. 2 (emphasis in original).); BOP Program Statement 5100.08, app. A, p. 1. A drug offender's role is determined by review of the "Offense Conduct" portion of the PSI "and any other available information[.]" Id. at p. 5.

Sampson initiated and completed the administrative remedies process regarding his claim to entitlement to a lower PSF. (Doc. 1-1, pp. 5–13.) At the administrative level, the Warden informed Sampson he was assigned the greatest severity PSF based on information gathered from his PSI and its Addendum,[3] including Sampson being responsible for 1.5 kilograms of cocaine base, being given an enhancement based on his supervision role, and being involved in a conspiracy which obtained a portion of its drugs through armed robberies. (Id. at p. 7.) On appeal to the regional office, Sampson was informed he was assigned the greatest severity PSF based on his leadership role and the amount of drugs attributable to him for his current drug offense. (Id. at p. 10.) Likewise, Sampson was informed on appeal to the national level his "greatest severity" PSF was based on his "leadership role in a large scale drug operation.

---

[3] Sampson was originally sentenced on June 21, 1996. J., United States v. Sampson, 3:95-CR-31-02 (W.D.N.C. June 21, 1996), ECF No. 217. Sampson's original sentence pre-dates the courts' efforts at modernization, and there is not a way to access the judgment to determine whether a statement of reasons was attached to the judgment (or whether a requirement to review the statement of reasons pre-dates 2006, the year the BOP revised its classification Program Statement).

[Sampson] utilized others to distribute and protect [his] drug trafficking activities, which included robbery at gun point and kidnapping." (Id. at p. 13.)[4]

Based upon the information available to this Court, the BOP correctly assigned the "greatest severity" PSF to Sampson pursuant to its application of Program Statement 5100.08. Sampson provides no reason—compelling or otherwise—for this Court to disturb the BOP's application of the Program Statement or to disturb its authority for Sampson's PSF classification. Accordingly, the Court should **DISMISS** Sampson's Petition for this additional reason.[5]

## III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Sampson leave to appeal *in forma pauperis*. Though Sampson has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly

---

[4] In response to a letter written to the Probation Office, Carolyn Morse affirmed that Sampson received an enhancement due to his role as "manager or supervisor" in the underlying offense. (Doc. 1-1, p. 15.) The relevant Program Statement does not allow for extra-judicial commentary.

[5] To the extent Sampson wishes to assert a claim that the BOP violated his right to due process by assigning the "greatest severity" PSF to him, such a claim must fail. Courts have determined a petitioner has no constitutional right to any specific custody classification. Rivera v. Martinez, Civil No. 1:CV-08-1040, 2008 WL 4200133, at *5 (M.D. Pa. Sept. 9, 2008) (citing Sake v. Sherman, C.A. No. 06-163, 2007 WL 2254529 (W.D. Pa. Aug. 6, 2007); Perez v. Fed. Bureau of Prisons, 229 F. App'x 55 (3d Cir. 2007) (per curiam)).

baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Sampson's Petition and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Respondent's Motion to Dismiss, **DISMISS** Sampson's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I further **RECOMMEND** that the Court **DENY** Sampson leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Sampson and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of July, 2018.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA